## In re WEISBERGER.
### No. 5860.

District Court, M. D. Pennsylvania.

May 22, 1930.

Albert W. Johnson, Jr., of Wilkes Barre, Pa., for bankrupt.

R. L. Levy, of Scranton, Pa., and Robert J. Doran, of Wilkes Barre, Pa., for opposing creditors.

WATSON, District Judge.

The discharge of the bankrupt is opposed on two grounds, the first of which is as follows:

"First. The said bankrupt concealed or failed to keep books of account or records from which his financial condition and business transactions might be ascertained."

The special master to whom the specifications were referred recommends that the specifications of objection to the bankrupt's discharge be sustained and the discharge of the bankrupt be denied. The bankrupt excepts to the report of the special master as not being sustained by the evidence.

On February 20, 1928, an involuntary petition in bankruptcy was filed in this court by creditors of the bankrupt and an adjudication in bankruptcy was made.

The business of the bankrupt was a general boot, shoe, and clothing store in Edwardsville, Pa. There is some evidence of the volume of business done by the bankrupt. His schedules show the following: Stock in trade, $6,500; debts due on open account, $100; accounts payable (nearly all of which accrued during the six months prior to the date of the filing of the involuntary petition in bankruptcy), $23,273.99; notes and bills which ought to be paid by the other parties thereto, $10,225; wages, $575; rent, $200.

Three witnesses testified that the merchandise in bankrupt's store on about January 1, 1928, was valued by them at between $18,000 and $20,000. One witness testified that he was willing to pay the bankrupt $15,-000 for the merchandise at that time, and that the bankrupt told him that he valued his merchandise in his store at that time at $25,-000.

The bankrupt kept no books of any kind. He produced at the time of the hearing some checks which he said were all he could find, but that he would look around and might find more; that he also had bills. The bankrupt did not produce any book showing his deposits in bank, or any book showing his cash receipts. No system of accounting could be established from that which the bankrupt did produce.

It is not sufficient, in order to successfully oppose a bankrupt's discharge, to show that he failed to keep books of account or

records, but it is necessary also to show that the failure was with intent to conceal his financial condition. Therefore, in this case, the failure to keep books or records being admitted, the question is the bankrupt's intent. Counsel for the bankrupt contends that the Bankruptcy Act (11 USCA) does not establish any standard of bookkeeping, nor require books to be kept according to any system. It is also contended that the intent to conceal cannot as a matter of law or of evidence be inferred merely from failure to keep books of account or records.

In support of his contention, counsel for bankrupt cites In re Weiner (D. C.) 28 F. (2d) 881, 882. An examination of that case shows that the holding was not so broad as is contended. The holding by the court was: "It is further true that there is no ironclad rule under the Bankruptcy Act requiring the keeping of any books; that is to say, a business may be so small that the total absence of them may be justified. Similarly, if books are kept, there is no particular form of accounting that need be followed. On the other hand, the election to keep them implies that they, if not by themselves, then in conjunction with other less formal records, shall prima facie give every evidence of an honest effort to reflect the entire business of the bankrupt. As long as there is any doubt on this point, a court of bankruptcy should resolve that doubt for the benefit of creditors. A discharge is a privilege granted by the act. One who seeks thereby to avoid his debts must comply strictly with its provisions."

In re Howard (C. C. A.) 180 F. 399, the other cases relied upon by counsel for the bankrupt, it was held: "Where the business of a bankrupt was that of mining promoter, not requiring elaborate accounts, and he had no employees and each of his mining deals was separate and complete in itself and he relied entirely upon pocket memoranda, noting upon them the deposits and withdrawals from his bank account, having his bank book balanced each month, such records and memoranda were sufficient as respects the rights of his creditors; they disclosing substantially the state of his financial affairs."

■ In the present case, the business of the bankrupt was such as to require the keeping of books of accounts or records. The volume of this business was such that neither the bankrupt nor any one else could know his financial condition, unless some system of books or records was kept. The absence of books of account or records in the conduct of a mercantile business of this character and magnitude is of such significance that an inference may properly be drawn therefrom adverse to the bankrupt respecting his intention. The bankrupt offered no explanation as to why such books were not kept other than that he was not a bookkeeper. He did not even urge that from those records which he produced he was able to know or show his financial condition. The most inexperienced boot, shoe, and clothing merchant knows that a mercantile business cannot be conducted as a mining promoter's business, a cobbler's shop, or a peanut stand. The failure to do that which all merchants do calls for an explanation, and none whatever is offered. The proper inference is that the intention was to suppress or conceal the financial condition that such books and records are ordinarily intended to disclose.

■ Every person must be held to intend the natural and necessary consequences of his acts.

In re Amster (D. C.) 249 F. 256, it was held: "Under Bankruptcy Act July 1, 1898, c. 541, § 14, 30 Stat. 550, as amended in 1903 (Act Feb. 5, 1903, c. 487, § 4, 32 Stat. 797 [Comp. St. 1916, § 9598*]), providing that a discharge shall be denied where the applicant, with the intent to conceal his financial condition, destroyed, concealed, or failed to keep books of account, or records from which such condition might be ascertained, a bankrupt, who conducted an extensive boot and shoe business, and whose stock in trade exceeded $10,000, must, where he failed to keep books of account, or records showing the amount of stock, liabilities, and assets, be deemed to have intended to conceal his financial condition, and so a discharge will be denied."

■ A discharge is a privilege, and one who seeks it should strictly and honestly comply with the provisions of the Bankruptcy Act with respect to the keeping of and producing of books of account or of records from which his financial condition may be ascertained. When he fails to do this, a statement by him that he is not a bookkeeper is not a satisfactory explanation, and is deserving of no consideration.

■ The bankrupt testified before the special master. The special master had an opportunity to see and hear the bankrupt and the other witnesses. She was better qualified to pass upon the credibility of witnesses and draw inferences from the testimony than the

*Now 11 USCA § 32.

reviewing court. The special master's findings should be sustained, unless clearly improper or without evidence to support them. Callaghan v. Myers, 128 U. S. 617, 666, 9 S. Ct. 177, 32 L. Ed. 547; Kimberly v. Arms, 129 U. S. 512, 9 S. Ct. 355, 32 L. Ed. 764; In re Simon & Sternberg (D. C.) 151 F. 507, 18 Am. Bankr. R. 204.

As I am of opinion that the bankrupt's application for discharge should be dismissed, for the reason that, with intent to conceal his financial condition, he destroyed, concealed, or failed to keep books of account or records from which such condition might be ascertained, it is unnecessary to discuss the second ground on which the discharge is opposed.

Now, May 22, 1930, the recommendation of the special master that bankrupt's petition for discharge be denied is approved.